F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAY 07 2021   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

Maura E. Lynch,

                              Appellant,                    Case No. 19-CV-03837-JS

     -against-

Stephen S. Vaccaro,
R. Kenneth Barnard, Chapter 7 Trustee,

                              Appellees.

------------------------------------------------------x

_____

**Appeal from the United States Bankruptcy
Court for the Eastern District of New York**
_____

**OPENING BRIEF FOR APPELLANT
MAURA E. LYNCH IN CASE NO. 19-CV-03837 (JS)**

**MAURA E. LYNCH**
*Pro Se Debtor*
PO Box 2340
Sag Harbor, NY 11963
631-377-1117

**Preliminary Statement**

Appellant Maura E. Lynch ("Debtor") respectfully submits appeal from the June 13, 2019 Order Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, Authorizing and Approving the Global Stipulation of Settlement Between the Chapter 7 Trustee and Stephen Vaccaro ("9019 Order") of the United States Bankruptcy Court for the Eastern District of New York (Trust, J).

**Issue on Appeal**

Appellant respectfully submits the Bankruptcy Court erred when it entered continued a judicial proceeding against Debtor and property of the Debtor that had commenced prior to the April 9, 2019 Chapter 11 bankruptcy petition, and when it entered the 9019 Order because these were done in violation of the automatic stay imposed pursuant to Code section 362(a) and are therefore void, and should be vacated by this Court.

**Background**

On November 9, 2015, Debtor filed for bankruptcy protection under Chapter 11. Debtor claimed a Homestead Exemption in her primary residence located at 24 Ninevah Place, Sag Harbor, NY.

On January 12, 2016, the Bankruptcy Court entered an Order Granting Motion for 2004 Examination of Vaccaro. [BK Dkt 73]

On June 28, 2017, the Chapter 11 was converted to one under Chapter 7. At the time of the conversion, Debtor had a 100% Reorganization Plan before the Court. The Conversion Order was entered without Notice and a Motion by a party in interest as mandated by Code section 1112, in controvert to other provisions of this code section and when there was a 100% Plan of Reorganization before the Court.

During the April 20, 2018 hearing on the Trustee's Motion to Authorize the Sale of 24 Ninevah Place, Sag Harbor, NY Debtor advised the Court of several issues regarding the Chapter

7 Trustee including his conflict of interest and money of the estate that was not accounted for. The Court indicated it would hold a hearing on these issues. Debtor had previously on several occasions advised the Court of these and other issues with the Chapter 7 Trustee, including in October and December 2017, as well as in her Opposition to the Trustee's motion to sell her home. [Bk Dkts 528, 556, 557, 627, 651]

On April 25, 2018, the Court entered an Order Abandoning all of the Estate's Rights and Interest in the East Gate property. ("East Gate Abandonment Order") [BK Dkt 670] In the matrimonial action the East Gate property was awarded to Debtor for its continued rental in support of herself and children and in lieu of Vaccaro continuing to make weekly support payments. This property was Debtor's primary source of income necessary for the ongoing support of herself and children.

During the time the East Gate property was in the possession and control of the Chapter 7 Trustee he collected approximately $127,000 of rental income from tenants of this property, in addition to taking possession of prior rental proceeds upon his appointment that were in Debtor's DIP account, however the Trustee did not make any payments toward the debt service of the property during the ten plus months he retained possession of the property, and the mortgage debt continued to accrue to Debtor. He had also failed to pay several thousands of dollars of other bills for utilities and contracted services provided to the East Gate Property which the Debtor had to pay to restore services and the vital income stream of the property.

Upon abandonment of the East Gate property he retained all the rental income from this property which should have also been abandoned to Debtor to make payments to the creditors of this property that the Trustee did not make, including the debt service and utilities. In a prior abandonment of estate property, the Alton Property, the Trustee did abandon the rental income associated with that property, so case doctrine would dictate the rental proceeds from this property would also be abandoned. When a property is abandoned from the estate it is meant to return the parties to the pre-petition status as if the bankruptcy did not happen. However in this

case, Debtor received back the property burdened with hundreds of thousands of dollars of additional debt and without the income it had generated, and that but for the bankruptcy she would have received these funds and they would have been available to pay her debts.

Upon the filing of the filing of the April 9, 2019 bankruptcy case, Debtor had a claim against the prior bankruptcy case for funds that should have been abandoned to her.

Whereas the abandonment of the East Gate property was pursuant to Code section 554 which would terminate the automatic stay pursuant to Code section 362(c)(1) by operation of law, the Order contained a typo and stated it was terminated pursuant Code section 362(d)(1). No motion or notice had been presented to the Court by any party requesting lift stay relief pursuant to Code section 362(d), and no hearing had been conducted to determine cause, and given the bankruptcy estate was still open the stay pursuant to Code section 362(a)(5) pursuant to Code section 362(c)(2) remained in effect as to property of the Debtor.

On May 29, 2019, Debtor filed a Motion for Reconsideration of the Attorney Fee Order. [BK Dkt 787]

On June 21, 2018, the Court approved the Sale of the Ninevah Property. ("Ninevah Sale Order") [BK Dkt 701] Despite the fact that the Homestead Exemption issue remained outstanding as discussed above, and there was no determination of what distribution it would provide to the unsecured creditors.

The June 21, 2018 Ninevah Sale Order contained a clause indicating Debtor had to vacate her home within 5 days of the scheduled closing. This was despite the fact that the Sale Contract was subject to tenancies and there was no motion presented or heard by the Court as to Debtor vacating or turning over her home, and no mention of her vacatur in the Trustee's Motion to Approve the Sale, thereby preventing her of any opportunity to defend her Homestead rights. This relief was just slipped into the Sale Order without any notice to Debtor and took Debtor completely by surprise. It also panicked Debtor because five days to pack up and move from a home she lived in with her children for four years was completely unreasonable, let alone sufficient time to

3

find new housing, and with the Homestead Exemption still outstanding this was a huge financial burden.

On July 3, 2018, Debtor filed an appeal of the Sale Order and a Motion for a Stay of the Sale Order and additional amended filings over the next few days. [BK Dkt 705, 706, 707 and 708]

On July 5, 2018, Debtor filed an Emergency Motion for the Removal of the Chapter 7 Trustee and his Counsel and an Immediate Stay of all further action by them, including the sale of the Ninevah Property, until the motion was decided. [BK Dkt 709]  The Motion was based on his failure to properly account for estate assets, actual conflicts of interest, failure to pursue assets of the estate, failure to preserve estate assets, failure to report and investigate fraud as mandated by 18 U.S.C. section 3057(a), among other things.[1] The Court, however, would not provide a hearing date consistent with an emergency. Thereafter, Debtor became inundated with numerous motions and appeals regarding the Ninevah Sale.

On July 6, 2018, the Court held a hearing Debtor's Stay Pending Appeal of the Ninevah Sale, but stated it would not address Debtor's Emergency Motion for Removal of the Chapter 7 Trustee and Stay of all further activity by the Trustee and his Counsel until that Motion was decided.

On July 6, 2018, the Court entered an order denying Debtor's request to stay the Sale of Ninevah. [BK Dkt 715] The Emergency Motion for Removal of the Trustee remained without a hearing date consistent with an emergency.

Over the next several weeks there were various motions filed in the U.S. District Court and Court of Appeals regarding a stay of the sale of the Ninevah Property where stays were granted then lifted.

---

[1] Debtor had advised the Trustee and the Court on several occasions about the frauds being perpetrated by Vaccaro.

On July 20, 2018, Debtor filed a Petition for Rehearing/Rehearing En Banc. [Court of Appeals Case No. 18-2051 Dkt 65]

On July 20, 2018, the Petition for Rehearing was denied, but the Rehearing En Banc was still to be decided and therefore the stay was still in place. [18-2051 Dkt 66]

On July 23, 2018, Mr. Herbst, counsel for the Trustee, filed an Affirmation of Non-Compliance and Request for scheduling an Emergency Hearing and Entry of a Supplemental Order. [Bk Dkt 744] There was no subsequent notice to Debtor that a hearing was scheduled pursuant to this request.

On July 23, 2018, Ms. Fitzgerald, counsel for the Trustee, filed an Affirmation of Non-Compliance. [BK Dkt 745]

On July 24, 2018, without having provided Debtor with notice that a hearing was being held pursuant to the Trustee's Emergency Request for a hearing, the Court conducted a telephonic emergency hearing. Debtor, not having notice, did not participate in this hearing.

On July 24, 2018, counsel for the Trustee reported to the Court that there was no stay in effect.

> MR. HERBST: She sent back then a more series of emails back and forth indicating she said there's a stay in place, of which we clearly disagree, there is no stay in place, Your Honor.

This representation to the Court was incorrect as there was a stay in place that was imposed by the filing of the July 20, 2018 Petition En Banc that had not yet been adjudicated by the Court of Appeals.

Also, during the hearing, due to my absence from the hearing, there was discussion about whether or not I had been served notice. Mr. Herbst also stated that he had my cell phone number and could call me, but I was never called.

> MR. HERBST: And Your Honor, by the way, we do apparently have a cell number for Ms. Lynch were Your Honor to want to find out if Ms. Lynch is going to be on the call.

5

Hours later, the Bankruptcy Court entered an Order Directing Debtor to Vacate the Ninevah Property and authorizing the Trustee to enlist the services of the U.S. Marshall. [BK Dkt 748] Mr. Herbst had informed the Court that local authorities would not be able to assist them with the eviction. This Order was entered despite Debtor not having been provided an opportunity to be heard when her constitutionally protected property rights were being determined an impeded.

On July 28, 2018, Debtor was forcibly removed from her home by three U.S. Marshalls who broke into her home at approximately 10 a.m. on a Saturday morning[2] without any prior notice[3], while the Homestead Exemption issue was still outstanding and while the stay imposed by Debtor's filing of a Petition for Rehearing and Petition en banc was still in effect. Debtor had participated in an earlier telephonic call and expressed to the Court that she was concerned about the lack of notice or motion seeking her to vacate, plus a lack of funds and time to effect a move in such a short amount of time. She had told the Court that she was trying to get alternate housing as of August 1, 2018.

On July 30, 2018, the Chapter 7 Trustee closed on the sale of Debtor's primary residence at 24 Ninevah Place, Sag Harbor, NY 11963. The closing took place despite the fact that a stay imposed by Debtor's filing of a Petition for Rehearing and Petition en banc was still in effect, and the Emergency Motion for the Removal of the Trustee was still outstanding.

Debtor's world was turned completely upside down by these events. Further detail about this is contained in her October 4, 2018 and November 19, 2018 letters to Chief Judge Dora L. Irizarry which were docketed in Case No. 18-3900(JS) at entry number 19 and 25-1.

On October 2, 2018, the Bankruptcy Court held a status conference during which it stated:

> THE COURT: ... there's some likelihood that the general entry claims aren't going to ever get paid anyway, so why litigate the amounts of general unsecured claims.

---

[2] In NYS evictions cannot be executed on Saturdays.

[3] Debtor had received an email copy of the July 24, 2018 Order on July 25, 2018 and was in the process of preparing a Notice of Appeal when the U.S. Marshalls broke into her house. There was no advance warning from the U.S. Marshalls that provided Debtor any opportunity to vacate the premises on her own.

This statement was made after the Trustee reported to the Court that there were approximately $1,037,000 of liquid funds in the estate. And after the Trustee had sold the Ninevah Property which should have only been done if it would provide a meaningful distribution to the unsecured creditors.

The Handbook for Chapter 7 Trustees contains the following:

Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

On November 13, 2018, the Chapter 7 Trustee filed a Motion for Proposed Settlement with Vaccaro regarding the Harbor Proceeds. [BK Dkt 784] This was done despite there being an outstanding claim of a secured creditor against these proceeds which on October 2, 2018 the Trustee said he would be filing an objection but had not done so yet. There were several oppositions filed to this Motion.

On November 28, 2018, Vaccaro filed a Motion for Determination that Funds held by the Estate are not Property of the Estate and for Turnover of These Funds. ("Turnover Motion") [BK Dkt 793] This was filed as a motion whereas it should have been an adversary proceeding in accordance with the provisions of Code section 542 and 543 and subject to Part VII discovery rules. This Motion was a disguised re-characterization of prior claims Vaccaro had filed against the estate in 2016 and 2017, Claim Nos. 11-1 and 11-2. All of the claims he was now asserting were non-estate assets, were actually pre-petition State Court disputed claims. This Motion also included a determination that funds related to the Harbor Sale were not estate funds which he and the Trustee had entered into a Stipulation on November 13, 2018 in settlement of his claim against those funds. There were several oppositions filed to the Turnover Motion, including the Chapter 7 Trustee who said it was pre-mature and that he did not have a final pool of assets yet. His Objection was filed on December 28, 2018. [BK Dkt 817]

In the Turnover Motion Vaccaro was asserting, among other things, a right to half the proceeds of the Ninevah Sale, whereas his rights and interest in the Ninevah property were

7

extinguished upon entry of the Judgment of Divorce on July 16, 2013, and the buyout of interest was fixed by the State Court as at December 1, 2012 which was calculated as $91,590. Debtor had satisfied the buyout provision long before the bankruptcy case was filed on November 9, 2015. The Trial Decisions issued by the State Court clearly provided Debtor the right to select one of the parties' properties and that failure to pay for the interest in the property would not stay the vesting of title to the party who chose it. The Trial Decisions set the valuation date for the buyout at December 1, 2012. Debtor selected the property on April 4, 2013, and provided detail of the buyout implementing the provision of the Trial Decisions that allowed for offset of credits and claims to pay for the buyout.

Vaccaro was also asserting a claim to half the rental proceeds of property Debtor received in equitable distribution pursuant to the Judgment of Divorce, a buyout of his interest in the Dartmouth property that he selected, half of the gross proceeds of an insurance claim whereby the Trial Decision specifically says he was only entitled to a portion of the net proceeds, and payment of an alleged State Court order requiring Debtor to pay him half of an account he claims had $55,000 in it. This order simply does not exist and had Debtor been able to conduct discovery this fact would have properly come to light. In fact, Vaccaro's exhibitions and support for the Turnover Motion do not include any order directing Debtor to do this.

On December 7, 2018, the Court entered a Contested Matter Scheduling Order for the Homestead Exemption, the Stipulation between the Chapter 7 Trustee and Vaccaro regarding the Harbor proceeds and the Vaccaro Turnover Motion setting a hearing date for January 29, 2019. [BK Dkt 807]

Meanwhile, in connection with the East Gate Abandonment Order, the secured creditor, Bank of America, sought to take advantage of the typo in that order and moved in State Court to continue foreclosure proceeding against the East Gate Property, which was now property of the Debtor, this action was initiated prior to the November 9, 2015 petition filing and still subject to the stay imposed at that time.

Additionally, the secured lender for the Alton property, Deutsche Bank, had also proceeded with a foreclosure action in State Court. They had tried to foreclose on the property mid 2018 but advising the State Court of the pending Chapter 7 stayed that attempt. Not to be deterred, they tried again in December 2018, and actually foreclosed on the property, but when Debtor again advised them of the stay violation, they vacated the sale. In October 2018, the Abandonment Order for the Alton property was issued [BK Dkt 781] that amended a December 28, 2017 Abandonment Order. [BK Dkt 579] Both Orders specifically said the stay was terminated only as to Debtor and Vaccaro, but despite not having requested nor receiving lift stay relief they proceeded anyway.

On January 2, 2019, Deutsche Bank filed a Motion in the bankruptcy case seeking an Order Confirming the Stay was Terminated pursuant to Code section 362(j). [BK Dkt 819]

On January 7th and 8th, 2019, Debtor served Vaccaro and his counsel Mendelson with a Rule 9011 motion under the 21 day Safe Harbor Provision related to the Vaccaro Turnover Motion.

On January 10, 2019, Mendelson filed a letter with the Court requesting an adjournment of the January 29, 2019 hearing date. [BK Dkt 822]

On January 16, 2019, the Chapter 7 Trustee filed a Letter re Settlement between the Trustee and Vaccaro. [Bk Dkt 826] The Settlement was to provide Vaccaro a distribution of up to more than half of the liquid assets of the estate, including 70% of Debtor's Homestead Exemption. There was no mention of the $1,000,000 plus that the estate held against Vaccaro. Debtor is unsure why the Chapter 7 Trustee would enter into a settlement agreement with Vaccaro when, on December 28, 2018 less than three weeks earlier, he filed an Opposition to Vaccaro's Turnover Motion saying it was pre-mature. [BK Dkt 817]

On January 17, 2019, Debtor filed a Letter Motion requesting an Order that she Participate in all Settlement Discussions between the Trustee and Vaccaro. [BK Dkt 828] Debtor had previously requested the Court direct that she be able to participate in all discussions between Vaccaro and the Trustee because of her concern that her rights under the State Court matrimonial

9

orders were being compromised, and the rights of the remaining creditors would not be properly protected. She first alerted the Court of her concern on April 20, 2018 when the Trustee and Vaccaro indicated they had already engaged in lengthy discussions regarding the proceeds of the Ninevah Sale, and again on October 2, 2018 when they referred to their discussions again. The Court did not respond to her Motion.

On January 23, 2019, the Court adjourned the January 29, 2109 hearing until March 11, 2019. [Bk Dkt 829]

On January 25, 2019, Debtor filed an Emergency Motion in the Bankruptcy Court to correct the typo in the Abandonment Order. This was in response to the secured lender's attempt to foreclose on the East Gate property while the Chapter 7 was still open and active and the stay pursuant to Code section 362(a)(5) pursuant to Code section 362(c)(2) was still in effect. She attempted to get a date to be heard, but none was provided. [BK Dkt 832]

On January 25, 2019, Debtor filed a Motion for Turnover of Non-Estate Assets. [BK Dkt 831] This request was for turnover of tenant security deposits related to the Alton and East Gate properties that had been abandoned from the estate. The estate no longer had any right or interest in the properties but Debtor had a fiduciary obligation to the tenants. This money was originally seized from her separate bank account where she held only bare legal title to these funds, and they were not property of the estate. Debtor also sought turnover of additional funds that the Trustee was in possession of that belonged to her children.

On January 25, 2019, Debtor filed an Objection to the rescheduling of the January 29, 2019 hearing on the Homestead Exemption. [BK Dkt 833] In connection with the Trustee and Vaccaro's request to adjourn the hearing on their Stipulation, consent was provided by all parties for that, however the Homestead Exemption matter was not part of what was consented to. Debtor was struggling greatly financially after being put out of the Ninevah Property but had not received any payment for her exemption, in addition to not receiving the rental income from East Gate when that property was abandoned to her with the hundreds of thousands of additional mortgage

debt that had accrued during the Chapter 7, the pressures of the secured lenders who were looking to foreclose, on top of many other crises she was dealing with and could not afford to put this hearing off any further. It had already been six months since she was put out of her home. She was experiencing the exact opposite of the fresh start that bankruptcy was intended to provide and requested this hearing not be put off any further. This objection was not responded to by the Court.

On January 30, 2019, Debtor filed an Opposition to Deutsche Bank's Motion confirming the Stay had terminated and requested an Affirmative Order from the Court that the Stay Remains in Effect until the Chapter 7 Case is closed or dismissed. [BK Dkt 835]

On February 20, 2019, Debtor filed a Motion to Object/Reclassify a claim filed by Yacht Club at Portofino – Claim #10. [BK Dkt 846]

On February 20, 2019, Debtor filed a Notice to Compel Abandonment of Non-Estate Assets. [BK Dkt 847] This was a follow up to the January 25, 2019 Order to Show Cause for Turnover of her tenant's security deposits that the estate no longer had any rights to or interest in.

On February 21, 2019, Debtor filed a Motion for Sanctions against Deutsche Bank and others pursuant to Code section 362(k) for their actions to foreclose on the Alton property. [BK Dkt 849]

On February 21, 2019, Debtor filed a Motion for Sanctions against Deutsche Bank and their counsel pursuant to Rule 9011. [BK Dkt 850]

On February 25, 2019, Debtor filed an Amended Emergency Motion requesting the Court correct the typo in the East Gate Abandonment Order. Again, no date was provided to be heard. [BK Dkt 858]

On February 25, 2019, Debtor filed with the Court the Motion for Sanctions against Vaccaro and his counsel Lee Mendelson pursuant to Rule 9011 in regard to the Vaccaro Turnover Motion. [BK Dkt 855]

11

On March 11, 2019, at a court ordered settlement conference, Debtor advised the Court that an auction date was set on the East Gate property for April 10, 2019 and pleaded with the Court to correct the typo she addressed in her two previous Emergency Motions so she would not lose her property. If the house was foreclosed on she would lose many hundreds of thousands of dollars of equity and be left with nothing. During the course of the appearance, the Chapter 7 Trustee indicated that he was not opposed to Debtor's request to correct the order that resulted from his Motion to Abandon the Property from the estate. Debtor also expressed her concern that the settlement conference was ordered without any discovery orders pursuant to applicable codes and Rules. See Transcript from March 11, 2019 [BK Dkt 888]

On March 11, 2019, the Court determined that the bank should have a say in whether or not the typo should be corrected and issued an Order Concerning Debtor's Motion for Reconsideration of the Abandonment Order with a response date of no later than March 27, 2019. [Bk Dkt 883] The Court directed Debtor to serve the order on all parties in the State Action which she did. [BK Dkt 890]

Also on March 11, 2019, a Notice of No Financial Management Certificate was issued requiring Debtor to file the certificate by March 20, 2019 which she did. [BK Dkt 889] This Notice took Debtor by surprise as this was an asset case that was still very active with over a million dollars of assets, and Debtor had many undecided motions before the Court, as discussed above. The docket entry indicates this was a Chapter 7 No Asset case which was confusing to Debtor because this was an asset case. Debtor complied with this requirement and filed the Certificate of Debtor Education on March 20, 2019. [BK Dkt 889]

No party in the State Court action filed an Opposition to the March 11, 2019 Order, and none had filed an Opposition to Debtor's January 25, 2019 or February 25, 2019 Emergency motions to correct the typo in the East Gate Abandonment Order either.

On March 22, 2019, Debtor filed a Request for Adjournment of the April 11, 2019 Hearing, and for a Discovery Scheduling Order in regard to the Proposed Stipulation of Settlement between

the Chapter 7 Trustee and Vaccaro. [BK Dkt 891] Debtor had not been able to file her Affidavit of Testimony and Exhibits for the Hearing due to dealing with the crisis of potentially losing her home and where she was unable to get any cooperation with discovery from the other parties regarding their settlement.

On March 28, 2019, whereas Debtor anticipated, in light of no objections to her Emergency Motions or the Court's March 11, 2019 Order Concerning her Motions, that the Court would correct the Abandonment Order, however, the corrected order was not issued, instead an Order Discharging Debtor was issued. [BK Dkt 893]

The discharge left Debtor's property vulnerable to the state court foreclosure actions and put the significant equity in the East Gate property in imminent jeopardy with the auction scheduled for April 10, 2019.

On April 8, 2019, the Court entered an Order granting Deutsche Bank's motion to confirm the termination of the automatic stay and Denying Debtor's Motion to correct the East Gate Abandonment Order. [BK Dkt 895] This was entered despite the fact that there were two sanctions motions pending against Deutsche Bank [BK Dkt 849 and 850] Also, in disregard for the clear wording of the Alton Abandonment Order which stated the stay was lifted only as to Debtor and Vaccaro.

On April 9, 2019, the Court entered an Order Denying Debtor's Request for an Adjournment and Discovery Scheduling Order related to the April 11, 2019 Hearing on the Contested Homestead Exemption and Proposed Stipulation of Agreement between the Chapter 7 Trustee and Vaccaro. [BK Dkt 897]

On April 9, 2019, with the foreclosure sale that was obtained in violation of the automatic stay scheduled for the next day, which would have caused her to lose many hundreds of thousands of dollars of equity in the property, Debtor filed for Chapter 11 bankruptcy protection which imposed a stay on all actions against Debtor and property of the estate. Case No. 19-72595

Debtor's bankruptcy schedules in the new Chapter 11 listed monies, property and assets that Debtor may be entitled to from administration of prior bankruptcy case. This included her Homestead Exemption and rental proceeds from the East Gate property which was in jeopardy of foreclosure.

On April 10, 2019, the Court scheduled an Initial Case Management Conference for the newly filed Chapter 11 for April 11, 2019. [BK Dkt 899]

On April 11, 2019, the bankruptcy court, despite the stay imposed by the filing of the less than two day old new bankruptcy filing, held a hearing on Vaccaro's objection to Debtor's Claim of Homestead Exemption in the Ninevah Property, and the contested hearing on the Agreement between the Chapter 7 Trustee and Vaccaro which sought to pay Vaccaro money from the prior bankruptcy estate that he was not entitled to, which funds rightfully belonged to Debtor and/or the creditors of her new bankruptcy estate.

The Bankruptcy Court directed Debtor's newly retained counsel to prosecute the hearing. Debtor objected to her counsel as he was not fully informed of all the issues being addressed and the voluminous underlying papers that had been filed in the case. Her new counsel did not have the benefit of deposing the witnesses prior to the hearing or requesting and/or reviewing discovery documents and evidence. It was also Debtor's position that the hearing was a stay violation. Debtor was not provided an opportunity to testify at the hearing in defense of her Homestead Exemption or her Objections to the Agreement between the Trustee and Vaccaro in defense of assets that rightfully belonged to the new estate, thereby also chilling her first, fourth, fifth and fourteenth amendment rights.

A letter from Debtor's former counsel to this Court on October 4, 2019 support Debtor's argument that the April 11, 2019 hearing affected assets of the newly created bankruptcy estate. [Dkt 6][4]

---

[4] Debtor notes that this appeal arises from Bankruptcy Case No. 15-74795. Debtor's counsel are still counsel of record in that case, however this Court allowed them to withdraw from this appeal despite the fact they filed the

## LEGAL ARGUMENT

Upon the filing of a bankruptcy petition, all entities are automatically stayed from commencing or continuing judicial proceedings against the debtor. *See* 11 U.S.C. § 326(a). The scope of the stay is broad and grants the debtor complete and immediate relief from all creditors. *SEC v. Brennan,* 230 F.3d 65, 70 (2d Cir.2000). It also protects creditors by "prevent [ing] dissipation of the debtor's assets before orderly distribution to creditors can be effectuated." *Penn Terra Ltd. v. Dep't of Envtl. Resources,* 733 F.2d 267, 271 (3d Cir.1984).

When a bankruptcy petition is filed "all legal or equitable interests of the debtor in property," "wherever located and by whomever held," become property of the estate. 11 U.S.C. § 541(a)(1). "Property of the estate" includes all causes of action that the debtor had a right to bring at the time the bankruptcy was filed, including causes of action that the debtor was not aware of prior to the bankruptcy filing. Collier on Bankruptcy P 541.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *O'Dowd v. Trueger (In re O'Dowd),* 233 F.3d 197, 202 (3d Cir.2000) (stating that property of the estate "includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act") (quoting H.R.Rep. No. 95–595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323); *see also Winick & Rich, P.C. v. Strada Design Assocs. (In re Strada Design Assocs.),* 326 B.R. 229, 236 (Bankr.S.D.N.Y.2005) ("Without doubt, causes of action that accrue under state law prior to the filing of a bankruptcy petition become 'property of the estate.' ").

By virtue of the mandates of Code Section 541(a), the Homestead Exemption claim of Debtor was property of the newly created bankruptcy estate, and the continuation of a proceeding against Debtor was a violation of the automatic stay imposed by Code section 362(a). Therefore

---

appeal and did not file any motion in the bankruptcy court to withdraw from this bankruptcy case and Debtor had no opportunity to submit papers in regard to a request for withdrawal from this case. However this Court allowed them to withdraw from this appeal based upon their withdrawal from the 2019 case. 19-72595

the resulting June 21, 2019 Order Sustaining Vaccaro's Objection to the Homestead Exemption claim is void and should be vacated by this Court.

" "[t]he filing of a bankruptcy petition operates as a stay applicable to all entities regarding the commencement or continuation of judicial proceedings against the debtor." *In re Enron Corp.* 306 B.R. 465, 475 (Bankr. S.D.N.Y. 2004)" *In re Worldcom, Inc.*, 325 B.R. 511, 518-19 (Bankr. S.D.N.Y. 2005)

Judicial actions taken against a debtor are void *ab initio*, absent a relief from the automatic stay. *See In re Patti, supra* 7; *see also In re Best Payphones, Inc.*, 279 B.R. 92, 97-98 (Bankr. S.D.N.Y. 2002)(Bernstein, C.J.) (any proceedings or actions described in § 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect). As actions taken in violation of the automatic stay are void, and not voidable,..

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." 11 U.S.C. § 362(a)(1). The stay is effective immediately upon the filing of the petition, *Shimer v. Fugazy (In re Fugazy Express, Inc.),* 982 F.2d 769, 776 (2d Cir. 1992); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3d Cir. 1991), and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect, *see 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988).

11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action

or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." The automatic stay provision is considered "'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (quoting H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97). "The stay is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citations omitted). The stay takes effect automatically and without the requirement of notice to affected parties; "[b]y its very terms, no action by any court is necessary for the stay to take effect." *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992); *see also In re Marine Pollution Serv., Inc.*, 99 B.R. 210, 217 (Bankr.S.D.N.Y. 1989) ("[A]ctions taken in violation of the stay are void even where there is no actual notice of the existence of the stay.").

In this case, the automatic stay went into effect immediately upon the filing of the new bankruptcy petition on April 9, 2019. Debtor's interests in assets the Trustee was seeking permission to transfer to Vaccaro based on his false claims was an asset of the newly formed estate. All participants in the April 11, 2019 hearing had actual knowledge of the bankruptcy filing and the hearing was the continuation of a judicial proceeding against Debtor that had commenced prior to the April 9, 2019 bankruptcy petition filing. Therefore, the hearing and resulting Order Approving the 9019 Agreement violated the automatic stay, are void, and Debtor respectfully requests this Court vacate the June 13, 2019 Order of the Bankruptcy Court.

## <u>ADDITIONAL ISSUES WITH THE 9019 ORDER</u>

There are many substantive issues and errors with the Court's determinations stated during the Ruling Conference on May 21, 2019, however due to the 362 violation being the overriding factor, and Debtor's severe lack of time to submit this brief, it is not necessary to get

17

into all of those matters which include but are not limited to violations of the Bankruptcy Code priority payment scheme, the violation of 28 U.S.C. section 157(b)(2) which requires the bankruptcy court abstain from rendering final decisions on state court disputed claims (none of Vaccaro's assertions in the Turnover Motion were supported by a final state court judgment that adjudicated his claims, they were all state court disputed claims), the Court's determination that claims the estate has against Vaccaro are not colorable or sustainable claims (many of the claims the estate has against Vaccaro are based on State Court orders on matters adjudicated in the State Court, that Vaccaro did not appeal, and I don't see how the Court could determine these claims are not sustainable, or how the Court could override these State Court judgments, especially in light of the detrimental effect ignoring these judgments would have on the estate, and serve to reward one creditor by absolving him of his obligations to the estate at the expense of the legitimate creditors of the estate), that no one else supported the 9019, (in fact no other creditor will get paid anything under the 9019), that the Iridium factors were not met, that the parties were deprived of discovery, the ambiguous and unclear language of the Ruling as to releases and outstanding claims, etc.

From the start of the bankruptcy proceeding Debtor sought to have Vaccaro produce documents in support of his various claims, but he would not produce them, and the Bankrutpcy Court would not compel their production in connection with the 2001 Examination. On March 5, 2019, Debtor subpoenaed Vaccaro [BK Dkt 872] to appear at the March 11, 2019 hearing which was adjourned to April 11, 2019, (the Bankruptcy Court stated the subpoena carried over to the adjourned date) and to produce documents to support his assertions in his Affidavit of Sworn Testimony with regard to the debt on the Dartmouth property as at December 1, 2012 (the date fixed by the State Court), production of the order directing Debtor to pay him half of $55,000 he claims she had in an account and was ordered to pay him by the State Court, among various other documents to support his assertions. Vaccaro failed to comply with the subpoena.

18

Due to the very limited time Debtor had to file four appellate briefs she was not able to fully brief these aspects of the appeal. If the Court is not inclined to not vacate based on the clear 362 violation, she respectfully requests additional time to more thoroughly brief these aspects of the appeal, however she respectfully submits this should not be necessary in light of the 362 violation.

### Statement From Debtor

On October 15, 2019, the District Court entered an Electronic Order directing Debtor file this Opening Brief by November 15, 2019. A similar order was entered regarding three other appeals 19-2364, 19-3837 and 19-3838. Debtor has no formal legal training and no support staff. It would be an onerous task for her to complete one appeal in that amount of time, let alone four (and one of the appeals, 19-2364, is actually for two orders that were combined so it's really five appeals). The case docket for 15-74795 is 176 pages long and the record for these appeals are hundreds of pages long, in some cases over 1000 pages. The appeals deal with various issues that Debtor has only rudimental familiarity with and extensive research would be necessary to file effective appeals for the benefit of the estate. Debtor respectfully submits this would be an onerous task for a small law firm with a staff of experienced attorneys and support team, let alone one individual with no formal legal training.

This Court is also aware, as previously reported in another appeal before this Court, that Debtor suffers from PTSD as a result of the systematic and persistent legal, financial and economic abuse of Vaccaro. The task of reviewing all the documents in this case that contain so many mistakes of fact, revisionist history, and other gross misrepresentations are triggering for her which makes writing her briefs even more challenging.

At the time the Electronic Order was entered Debtor was working on a briefing deadline with the Second Circuit Court of Appeals which prevented her from dedicating any time to these appeals for the first two weeks. Given the Electronic Order stated that no extensions would be granted and the appeals would be dismissed if not filed by November 15, 2019, Debtor has put

19

forth her best effort, however given the short amount of time, her lack of legal training and many other crises she was dealing with during this time Debtor respectfully requests the Court give some consideration for lack of form, typos, or other technical deficiencies, and allow her to edit or amend this filing as necessary in the interest of justice, and to interpret the following to raise the strongest arguments they suggest. (Courts are obliged to liberally construe submissions of a *pro se* litigant and to interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted)) Debtor has been operating on barely 4 hours sleep a night and dedicating over 14 hours a day in order to meet the deadline set by the Court, This has caused major disruption in many other areas of her life for the sake of making an earnest attempt to meet the Court's deadline.

## CONCLUSION

By virtue of the foregoing, Debtor respectfully requests the June 13, 2019 Order Approving the Global Settlement between the Chapter 7 Trustee and Stephen Vaccaro be vacated as void for violating the automatic stay, and grant Debtor such other further relief as the Court deems proper and just.

Dated: Wainscott, New York
      November 15, 2019

                               Maura E. Lynch
                               Pro Se Debtor,

                               By: _____
                                   Maura E. Lynch
                                   PO Box 2340
                                   Sag Harbor, New York 11963
                                   631-377-1117